# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-00822-PAB-KMT

WILLIE JACKSON,

    Plaintiff,

v.

TIMOTHY NORTON as SHERIFF OF ELBERT COUNTY SHERIFF'S OFFICE,

    Defendant.

## AMENDED COMPLAINT & JURY DEMAND

Plaintiff WILLIE JACKSON, by and through counsel, Cornish & Dell'Olio, P.C., hereby files this Complaint and respectfully alleges as follows:

## INTRODUCTION

1. This is a civil action for damages and other relief against Timothy Norton, in his official capacity, to redress the violations of the First Amendment.

## JURISDICTION

2. The Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), as well as 42 U.S.C. § 2000e-5.

## VENUE

3. The unlawful actions alleged herein were committed in Elbert County in the state of Colorado.

4. Venue is proper in the United States District Court for the District of Colorado under 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff Willie Jackson is a resident of Colorado Springs, Colorado.

6. Elbert County Sheriff's Office ("ECSO") is a law enforcement organization that operates under the authority of the Sheriff.

7. ECSO is responsible for conducting various law enforcement and detention functions within Elbert County, Colorado.

8. Timothy Norton is the elected Sheriff of Elbert County.

9. Sheriff Norton has exclusive control over the hiring and firing of ECSO employees pursuant to Colorado statute.

**FACTS UPON WHICH CLAIMS ARE BASED**

*A. Plaintiff's Career in Law Enforcement*

10. All prior allegations are incorporated herein.

11. Plaintiff began his employment with ECSO in August 2015 as a Patrol Deputy.

12. Plaintiff is currently employed by the ECSO as a Senior Deputy.

13. Since beginning employment with ECSO, Plaintiff has worked in the Patrol Division, Traffic Division, and Investigations Division.

14. Prior to working for ECSO, Plaintiff worked in law enforcement or related fields for approximately ten years.

15. Throughout his tenure with ECSO, Plaintiff has performed the duties of his position successfully.

*B. Plaintiff's Constitutionally-Protected Political Speech and Political Affiliation*

16. When Plaintiff began his employment with ECSO, Shayne Heap was the Sheriff and Troy McCoy was the Undersheriff ("McCoy").

17. In 2018, an election for a new Elbert County Sheriff occurred.

18. In the 2018 Republican primary race for Elbert County Sheriff, McCoy ran against Timothy Norton.

19. Plaintiff publicly supported McCoy's candidacy for Elbert County Sheriff by posting messages of endorsement for McCoy on public social media forums.

20. Plaintiff publicly supported McCoy's candidacy for Elbert County Sheriff by publicly encouraging voters to cast their ballots for McCoy.

21. During the 2018 campaign for Elbert County Sheriff, Plaintiff actively opposed Timothy Norton's candidacy for Elbert County Sheriff by posting information on public social media forums about Timothy Norton's disciplinary record with his previous employer, the Phoenix Police Department.

22. During the 2018 campaign for Elbert County Sheriff, Plaintiff actively opposed Timothy Norton's candidacy for Elbert County Sheriff by publicly challenging Timothy Norton's fitness to serve as Sheriff.

23. During the 2018 campaign for Elbert County Sheriff, Plaintiff actively opposed Timothy Norton's candidacy for Elbert County Sheriff by questioning Timothy Norton during a campaign event held in Elizabeth, Colorado.

24. Plaintiff's political activities during the 2018 campaign for Elbert County Sheriff, including Plaintiff's affiliation with and speech in support of McCoy, were protected under the First Amendment of the U.S. Constitution.

25. During the 2018 campaign for Elbert County Sheriff, Timothy Norton developed a political animus against Plaintiff because Plaintiff supported McCoy in his candidacy for Sheriff.

26. During the 2018 campaign for Elbert County Sheriff, Timothy Norton developed a political animus against Plaintiff because Plaintiff failed to endorse Timothy Norton's candidacy

for Sheriff.

27. On June 26, 2018, Timothy Norton won the Republican primary race for Elbert County Sheriff.

28. On November 6, 2018, Timothy Norton won the election for Elbert County Sheriff.

### C. *Plaintiff's Reassignment to Patrol Division*

29. On January 8, 2019, Timothy Norton was sworn in as Sheriff of Elbert County.

30. After taking office, Timothy Norton, in his official capacity as Sheriff and in his individual capacity, began to subject Plaintiff to adverse treatment because Plaintiff failed to support and opposed Timothy Norton's candidacy for Sheriff.

31. In or around the beginning of January 2019, Sheriff Norton expressed to Undersheriff Dave Fisher ("Undersheriff Fisher") and Lieutenant Patrick Cillo ("Lt. Cillo") that he was furious at Plaintiff because of Plaintiff's political activities during the 2018 campaign for Elbert County Sheriff and suggested that he wanted to terminate Plaintiff's employment.

32. In response, Lt. Cillo cautioned Sheriff Norton against taking adverse action against Plaintiff because of his constitutionally-protected political activities.

33. As an alternative to terminating Plaintiff's employment, Sheriff Norton then expressed a desire to move Plaintiff out of the Investigations Division because he "didn't want to see [Plaintiff's] face."

34. On January 23, 2019, Sheriff Norton reassigned Plaintiff from the Investigations Division to the Patrol Division.

35. Plaintiff's reassignment to the Patrol Division required Plaintiff to work the undesirable graveyard shift.

36. Similarly-situated ECSO employees who supported Timothy Norton's candidacy

for Sheriff were not reassigned to less desirable positions.

37. Similarly-situated ECSO employees who did not oppose Timothy Norton's candidacy for Sheriff were not reassigned to less desirable positions.

38. Sheriff Norton's decision to reassign Plaintiff to the Patrol Division was because of Plaintiff's exercise of his First Amendment rights during the 2018 election for Elbert County Sheriff.

39. Plaintiff was advised that his reassignment to the Patrol Division was temporary and was necessary because Plaintiff was the only Field Training Officer ("FTO") available to be reassigned.

40. Between January 23, 2019 and March 25, 2019, three deputies trained as FTOs returned to duty for ECSO, thereby eliminating the FTO shortage that allegedly prompted ECSO to reassign Plaintiff to the Patrol Division.

41. Despite the increase in FTOs at ECSO between January 25, 2019 and March 25, 2019, Plaintiff was not permitted to return to his position in the Investigations Division until the end of August 2019.

### D. Plaintiff's Non-Selection for Promotion to Sergeant

42. On February 19, 2019, Sheriff Norton published an announcement seeking applicants for a Patrol Sergeant position (hereinafter "Original Job Announcement").

43. The Patrol Sergeant position paid approximately $4,000 more annually than Plaintiff's annual salary as a Senior Deputy.

44. Among other qualifications, the Original Job Announcement for the Patrol Sergeant position required that applicants have at least two years of service with the ECSO.

45. Plaintiff was the only ECSO employee who met the time-in-service requirement of

the Original Job Announcement for the Patrol Sergeant position.

46. On or about February 20, 2019, Sheriff Norton became aware that Plaintiff was the only ECSO employee who met the time-in-service requirement of the Original Job Announcement for the Patrol Sergeant position.

47. On February 20, 2019, Sheriff Norton revised the announcement seeking applicants for the Patrol Sergeant position (hereinafter "Revised Job Announcement").

48. The Revised Job Announcement for the Patrol Sergeant position only required that applicants have one year of service with the ECSO.

49. At least four ECSO deputies met the minimum qualifications set forth in the Revised Job Announcement for the Patrol Sergeant position.

50. Four ECSO deputies applied for the Patrol Sergeant position: Plaintiff, Deputy Michael Saunders, Deputy Michael Averett, and Deputy Michael Skalisky.

51. Plaintiff was the best qualified candidate for the Patrol Sergeant position.

52. Plaintiff had more time in service with ECSO than Deputies Saunders and Averett.

53. Plaintiff had more supervisory experience than the other three candidates who applied for the Patrol Sergeant position.

54. Plaintiff was the only candidate for the Patrol Sergeant position who had experience working in three divisions at ECSO, including the Patrol Division, Traffic Division and Investigations Division.

55. Plaintiff had an unblemished disciplinary record with ECSO.

56. On March 19, 2019, ECSO held oral boards for the Patrol Sergeant position.

57. On March 20, 2019, Sheriff Norton selected Deputy Saunders for the Patrol Sergeant position.

58. Deputy Saunders did not publicly oppose or campaign against Sheriff Norton's 2018 candidacy for Sheriff of Elbert County.

59. Sheriff Norton claimed that he based his promotion decision entirely on candidates' performance during the March 19, 2019 oral boards.

60. Sheriff Norton claimed that Deputy Saunders performed better than the other three applicants on the March 19, 2019 oral boards.

61. Sheriff Norton's explanation for the decision to promote Deputy Saunders to the position of Patrol Sergeant is false and is a pretext to cover up illegal discrimination based First Amendment retaliation.

62. On or about March 20, 2019, Deputy Averett informed Plaintiff that, prior to the March 19, 2019 oral boards for the Sergeant Patrol position, ECSO Sergeant Jonathan Rollf ("Sgt. Rollf") met with Deputies Saunders and Skalisky and provided them with the test questions.

63. On March 22, 2019, Plaintiff informed Sgt. Turner of Deputy Averett's allegation that Sgt. Rollf provided Deputies Saunders and Skalisky with the test questions prior to the March 19, 2019 oral boards.

64. After receiving Plaintiff's report, Sgt. Turner contacted Deputy Averett on the telephone and questioned Deputy Averett as follows: "Willie told me that Skalisky came to you and, um, said that he was given the scenarios specifically before the test. Is that true? Yes or no? Did they cheat, yes or no?" In response, Deputy Averett answered "Yes, that's true."

65. On or about March 22, 2019, an Internal Affairs investigation ("IA Investigation") was initiated in response to Deputy Averett's allegation that Sgt. Rollf provided Deputies Saunders and Skalisky with the test questions prior to the March 19, 2019 oral boards.

66. During the IA Investigation, Lt. Cillo asked Deputy Averett the following question

7

three times: "Did you say to Willie Jackson that Skalisky told you that Rolff walked him and Saunders through the test questions prior to the testing?" In response, Deputy Averett stated "Absolutely not."

68. On March 27, 2019, Plaintiff was interviewed by Lt. Cillo as part of the IA Investigation.

68. During the IA Investigation interview, Plaintiff complained to Lt. Cillo that he believed he was being discrimination against by Sheriff Norton because of Plaintiff's protected political activities during the 2018 campaign for Sheriff of Elbert County. Specifically, Plaintiff and Lt. Cillo engaged in the following exchange:

> Plaintiff: I feel discriminated against. I do. I truly do. I truly, honestly do. [Sheriff Norton] wanted to let me go from the time that he came in this office. He had something against me, a personal thing against me, off of a campaign. Off of a campaign.
>
> Lt. Cillo: Yep. It's not just you.
>
> Plaintiff: And that's bullshit.
>
> Lt. Cillo: It's not just you.
>
> Plaintiff: And that's bullshit.
>
> Lt. Cillo: I didn't say it wasn't. And I'm the one who told [Sheriff Norton]: 'If you fucking do that, you're going to get it.'

69. On or about August 29, 2019, Sheriff Norton promoted Deputy Skalisky to the position of Sergeant.

70. On or about October 19, 2019, Deputy Averett resigned his position with ECSO.

71. To date, Plaintiff has never been promoted to the position of Sergeant.

72. In or around November 2019, Sheriff Norton called Plaintiff into a meeting to discuss the possibility of hiring a law enforcement officer known to Plaintiff.

73. During the November 2019 meeting, Sheriff Norton told Plaintiff that he knew that Plaintiff was "a big supporter of McCoy" during the 2018 election for Elbert County Sheriff.

74. During the November 2019 meeting, Sheriff Norton also accused Plaintiff of disliking Sheriff Norton because Plaintiff endorsed McCoy during the 2018 election for Elbert County Sheriff.

75. During the November 2019 meeting, Plaintiff assured Sheriff Norton that he harbored no ill feelings towards Sheriff Norton, regardless of who Plaintiff supported during the 2018 election for Elbert County Sheriff.

## **FIRST CAUSE OF ACTION**
**(Section 1983 - First Amendment Retaliation by Sheriff Norton as Sheriff of ECSO and Sheriff Norton, individually)**

76. Plaintiff realleges and incorporates all paragraphs of this Complaint as though fully set forth herein.

77. Plaintiff engaged in political campaigning on behalf of Troy McCoy in the race for Elbert County Sheriff against Timothy Norton.

78. Plaintiff engaged in political campaigning as a private citizen.

79. Plaintiff did not engage in political campaigning while performing official job duties or as a result of his official job duties.

80. Plaintiff's political campaigning for Troy McCoy related to the election of the Elbert County Sheriff in 2018.

81. Plaintiff's political campaigning for Troy McCoy related to a matter of public concern: the campaign and election for the Elbert County Sheriff.

82. Plaintiff was not acting pursuant to his job duties when he engaged in his speech concerning his political support for Troy McCoy.

83. Sheriff Norton was the final policymaking authority for the ECSO.

84. In January 2019, Sheriff Norton exercised his final policymaking authority to reassign Plaintiff to the Patrol Division.

85. In March 2019, Sheriff Norton exercised his final policymaking authority to pass Plaintiff over for promotion to Patrol Sergeant.

86. Sheriff Norton, acting in his official and individual capacities, reassigned Plaintiff to the Patrol Division and passed Plaintiff over for promotion to Patrol Sergeant for exercising his constitutional right to speak out about matters of public concern.

87. Sheriff Norton, in his official and individual capacities, thereby deprived Plaintiff of his rights, privileges, and immunities as secured by the First Amendment of the U.S. Constitution.

88. The actions of Sheriff Norton, in his official and individual capacities, were intentional, willful, and malicious and/or in reckless disregard of Plaintiff's rights as secured by the First Amendment and 42 U.S.C. § 1983.

89. The right to engage in private political speech on a matter of public concern is clearly established.

90. Sheriff Norton's decisions to reassign Plaintiff and pass him over for promotion because of Plaintiff's protected speech represented the official custom, policy, or practice of the ECSO.

91. The termination of Plaintiff's employment occurred under color of state law.

92. The acts of the ECSO and Sheriff Norton have caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

## SECOND CAUSE OF ACTION
### (Section 1983 - First Amendment Political Affiliation Retaliation by Sheriff Norton as Sheriff of ECSO and Sheriff Norton, individually)

93. Plaintiff realleges and incorporates all paragraphs of this Complaint as though fully set forth herein.

94. The First Amendment of the U.S. Constitution protects public employees from discrimination based upon their political beliefs, affiliation, or non-affiliation unless their work requires political allegiance.

95. Plaintiff affiliated with and campaigned for Troy McCoy as he ran for the Republican nomination for the Elbert County Sheriff against Timothy Norton.

96. Timothy Norton became upset with Plaintiff's political affiliation with Troy McCoy.

97. Timothy Norton won the Republican nomination for Elbert County Sheriff.

98. Plaintiff's political affiliation was a motivating factor behind Sheriff Norton's decision to reassign Plaintiff to the Patrol Division.

99. Plaintiff's political affiliation was a motivating factor behind Sheriff Norton's decision to pass Plaintiff over for promotion to Patrol Sergeant.

100. Plaintiff's employment as a Deputy with the ECSO did not require political allegiance.

101. Sheriff Norton exercised his final policymaking authority to reassign Plaintiff to the Patrol Division and to pass Plaintiff over for promotion to Patrol Sergeant.

102. Sheriff Norton, acting in his official and individual capacities, reassigned Plaintiff to the Patrol Division and passed Plaintiff over for promotion to Patrol Sergeant because Plaintiff exercised his constitutional right of political affiliation.

103. Sheriff Norton, in his official and individual capacities, thereby deprived Plaintiff of his rights, privileges, and immunities as secured by the First Amendment of the U.S. Constitution.

104. The actions of Sheriff Norton, in his official and individual capacities, were intentional, willful, and malicious and/or in reckless disregard of Plaintiff's rights as secured by the First Amendment and 42 U.S.C. § 1983.

105. The right to exercise political affiliation by public employees whose positions do not require political allegiance is clearly established.

106. The decisions to reassign Plaintiff and pass him over for promotion by Sheriff Norton for his political affiliation represented the official custom, policy, or practice of the ECSO.

107. Plaintiff's reassignment and non-selection for promotion occurred under color of state law.

108. The acts of the ECSO and Sheriff Norton have caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief, pursuant to 42 U.S.C. §§ 1981a, 1988, 2000e-5(g), and Fed. R. Civ. P. 54:

    a.    Nominal damages;

    b.    Nonpecuniary and compensatory damages, including damages for emotional distress and consequential damages;

    c.    Punitive damages against Sheriff Norton in his individual capacity;

    d.    An order retroactively promoting Plaintiff to the position of Sergeant;

e. Back pay, including loss of benefits and seniority;

f. Injunctive relief prohibiting Defendants from interfering in any manner with Plaintiff's exercise of rights secured by the First and Fourteenth Amendments to the United States Constitution or from basing any actions regarding Plaintiff's employment upon Plaintiff's exercise of First Amendment rights;

g. A declaration that Defendants' conduct violated Plaintiff's rights under Title VII, Section 1981, and the First Amendment;

h. Pre- and post-judgment interest at the highest rate allowed by law;

i. Costs and reasonable attorneys' fees pursuant to Fed. R. Civ. P. 54 and 42 U.S.C. § 1988; and

j. All other legal or equitable relief to which Plaintiff is entitled.

## JURY DEMAND

**Plaintiff requests this matter be tried by a jury.**

Respectfully submitted this 23rd day of November, 2021.

CORNISH & DELL'OLIO, P.C.

s/Julie D. Yeagle
Julie D. Yeagle, # 52247
Bradley J. Sherman, # 39452
Cornish & Dell'Olio, P.C.
431 N. Cascade Ave. Suite 1
Colorado Springs, CO 80903
719-475-1204
719-475-1264 (fax)
jyeagle@cornishanddellolio.com
bsherman@cornishanddellolio.com
Attorneys for Plaintiff

Plaintiff's address:

505 Wuthering Heights Drive
Colorado Springs, CO 80921